**Angela Maria PIERNO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 374, Docket 29931.**

United States Court of Appeals
Second Circuit.

Argued April 2, 1968.

Decided July 9, 1968.

George J. Robertazzi, Brooklyn, N. Y., for petitioner.

Francis J. Lyons, Special Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty. and Daniel Riesel, Special Asst. U. S. Atty., on the brief), for respondent.

Before MOORE, WOODBURY * and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Early in 1964, while in this country pursuant to a privilege of voluntary departure granted by the Attorney General, in a deportation proceeding following admission as a nonimmigrant visitor for pleasure and subsequent unauthorized

* Of the First Circuit, sitting by designation.

acceptance of employment, Angela Vista, an alien, married Anthony Pierno, a citizen of the United States. She then moved to reopen her deportation proceedings and applied for an adjustment of status. Her husband filed a petition for nonquota status, for her benefit, which was approved on April 7, 1964. On April 28, a hearing on Mrs. Pierno's application for an adjustment of status was held. It was agreed that she would appear for a medical examination and that a report of further inquiry by the Service could be entered into evidence *ex parte*, provided that it contained nothing adverse to her, and that if it did contain any information adverse to Mrs. Pierno's interest the hearing could be reopened without formal notice.

In July of 1964, Anthony Pierno's son filed an annulment action against Angela and Anthony Pierno in New York Supreme Court. Further proceedings in connection with her application for an adjustment of status were stayed pending the outcome of the annulment action. On December 16, the annulment action was dismissed on the merits. Seven days later Anthony Pierno died. After a hearing, the Special Inquiry Officer held "for that reason alone [the death of Mr. Pierno], without consideration of other facts, it is necessary to find that respondent [Mrs. Pierno] does not meet the minimum statutory requirements for eligibility under the provisions of Section 245 [1] of the Immigration and Nationality Act. Accordingly, for that reason alone, we must deny her application * * *"

Section 245(a) provides that the Attorney General may adjust the status of an alien, admitted as a nonimmigrant to that of an alien admitted for permanent residence as a nonquota immigrant if all of five specified conditions are met. The only condition at issue in the case at bar is that of visa availability. Where an alien is already in this country, no visa is actually issued. Regulation 245.1 equates "visa availability" with approval of a petition for nonquota status. Such approval had been granted by the Service in the case at bar. Yet, the Service contends that the automatic revocation of approval pursuant to Regulation 206.1(b) (2), when Mr. Pierno died, precludes the Service from granting Mrs. Pierno's application for an adjustment of status. We disagree.

Section 206, under which the automatic revocation regulations are promulgated, provides:

> The Attorney General may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition [for nonquota status] approved by him * * *

The section is permissive; it grants the Attorney General discretion in determining what shall constitute good and sufficient cause and whether revocation of approval shall occur or be withheld in those cases where there is good and sufficient cause for revocation. It should not be interpreted to authorize the Attorney General's wooden application of rules for automatic revocation. In Stellas v. Esperdy, 388 U.S. 462, 87 S.Ct. 2121, 18 L.Ed.2d 1322 (1967), reversing 366 F.2d 266 (2 Cir. 1966), the Supreme Court remanded the cause before it for further proceedings before the Service when the Service applied its rule that petition approval is automatically revoked when the petitioning citizen-spouse withdraws his petition. Regulation 206.1 (b) (1). See also, United States ex rel. Stellas v. Esperdy, 366 F.2d at 272–274

1. Section 245, 8 U.S.C. [1964 ed.] § 1255:
"(a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved." * * *
The Aliens and Nationality title of the United States Code has been extensively amended since these proceedings were commenced. 8 U.S.C. (1964).

(Moore, J., dissenting). We can hardly imagine that Congress would have intended Mrs. Pierno to be deported as a result of her husband's death had he been, for instance, a member of the armed forces killed in action while the status adjustment proceedings were pending. Yet, such a result would follow from the Service's decision. The purpose of placing such discretion regarding immigration in the hands of the Attorney General, rather than having that field governed by a detailed statute, is to give some flexibility in treating a myriad of possible situations. Regulations issued by the Attorney General should not be so applied as to frustrate that Congressional intent. Deportation ought not be based solely upon the death of Mrs. Pierno's husband; the Service should exercise its discretion and examine the totality of the evidence bearing on Mr. Pierno's request for nonquota status. By inordinate delay between approval of petitions for nonquota status and adjustment of status, many aliens could be denied adjustment by the happenstance of a spouse's death.

The inquiry in connection with Mrs. Pierno's application for an adjustment of status was stayed pending the annulment suit brought by her stepson. If the proceedings had continued in their normal course, her status would most probably have been adjusted before her husband's untimely death. We doubt that Congress intended aliens otherwise eligible to the exercise of administrative discretion to be deprived of the opportunity of remaining permanently in this country as a result of groundless suits brought by persons who are not even parties to the immigration proceedings. In Mrs. Pierno's situation, the Service should not rely upon her husband's death in order to deny her application for status adjustment. Section 246(a) empowered the Attorney General to revoke the status adjustment of any person within five years of that person's status adjustment, if it appears to the Attorney General that the person was ineligible for adjustment. This broad power need not be expanded by delaying acting upon an alien's application for adjustment, and then relying upon the fact that his petition for nonquota status has been automatically revoked by some subsequent event. There is no need to hold that the Government is estopped. See, e. g., Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951). Where the Service stays its inquiry waiting for some future occurrence, such as annulment here, which, if it occurs, will automatically revoke its approval of a petition for nonquota status, it may well in all fairness refrain from relying upon an occurrence which constitutes some other independent ground for automatic revocation under the regulation as drawn. The Service must not be frustrated in its duty fully to investigate the eligibility of aliens seeking to become permanent residents of this country. On the other hand, the alien need not be penalized as a result of events occurring during an unusually long investigation which are totally unrelated to that investigation. Under the unusual circumstances here, as in *Stellas*, supra, the Service may exercise the discretion given by the statute in spite of the provision of the regulation purporting to limit that discretion.

We do not know the period of investigation which normally takes place between the approval of an alien's petition for nonquota status and action upon the alien's application for adjustment of status. We are informed that action would probably have been completed prior to Mr. Pierno's death were it not for the annulment action, which was determined by the state court to be groundless. Since the Service relied solely upon Mr. Pierno's death and refused to exercise its discretion after an examination of all facts in its proceedings regarding Mrs. Pierno's application for an adjustment of status, we vacate the order of the Board of Immigration Appeals and remand the cause for further administrative proceedings not inconsistent with this opinion.