Stefanos ZAOUTIS, Plaintiff,

v.

Maurice KILEY, as District Director for the New York District of the Immigration and Naturalization Service, and the Immigration and Naturalization Service, Defendants.

No. 75 Civ. 2783.

United States District Court, S. D. New York.

Aug. 11, 1976.

Schiano & Wallenstein, and Daniel Riesel of Winer, Neuburger & Sive, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants; Thomas H. Belote, Sp. Asst. U. S. Atty., New York City, of counsel.

WYATT, District Judge.

This is a motion by plaintiff for summary judgment and a cross-motion by defendant District Director for the same relief. Fed. R.Civ.P. 56.

Plaintiff Zaoutis is an alien. He entered this country lawfully on November 6, 1963, as a non-immigrant visitor. He worked for a time for the Greek Government as a doorman at the consulate in New York City.

On January 10, 1965, Zaoutis married Camacho, a United States citizen.

On August 25, 1965, the status of Zaoutis was "adjusted" by the Service to that of an "alien lawfully admitted for permanent residence". 8 U.S.C. § 1255(a) The basis for the adjustment was his marriage to a United States citizen.

On April 5, 1967, Zaoutis got a Mexican divorce from Camacho and on October 1, 1967 he married Gaglia, a Greek citizen.

The Service then conducted an investigation of fraudulent marriages to secure immigration benefits. Eventually the Service believed it had sufficient evidence to establish that the marriage of Zaoutis and Camacho was fraudulent.

1.

The law provides (8 U.S.C. § 1256(a)) in relevant part as follows:

"If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 . . . of this title . . . to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible

for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person . . . and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made."

## 2.

Under date of May 20, 1970, the District Director of the Service served Zaoutis with a "notice of intention to rescind" his adjustment of status. The procedure was as provided in Regulations, specifically 8 CFR 246.1. In this notice there is no statement that it had appeared "to the satisfaction of the Attorney General" [or a designated representative, such as the District Director] that Zaoutis "was not in fact eligible for . . . adjustment of status". On the contrary, the notice states that it is "alleged" and that it is "charged" that Zaoutis was not in fact eligible for adjustment of status. The Regulations (8 CFR 246.1), however, provide that "if it appears to a district director that a person residing in his district was not in fact eligible for the adjustment of status made in his case, a proceeding shall be commenced by the service upon such person of a notice of intention to rescind . . .", etc.

The quoted Regulation partly tracks the language of the statute (8 U.S.C. § 1256(a)) as to it appearing that the alien "was not in fact eligible . . .", etc. and substitutes "district director" for "the Attorney General" as used in the statute. It seems clear, however, that the determination and notice by the district director which commences the proceeding is *not* a delegated determination under the statute which requires rescission of the adjustment of status. The object of the proceeding under the Regulations is to determine whether the alien "was not in fact eligible for such adjustment of status" (8 U.S.C. § 1256(a)), a determination made for the Attorney General by the Board of Immigration Appeals after an initial decision of a special inquiry officer. 8 CFR 3.1, 246.6, 246.7

Under date of June 10, 1970, counsel for Zaoutis requested a hearing, asked to be either before or after the period June 29–July 27, 1970, when counsel would be out of the country. No hearing was set by the Service, however, in part because, we are told, there was "a request by a Bar Association disciplinary committee investigation" (Belote affidavit, ¶ 14).

The five year limitation of 8 U.S.C. § 1256(a) expired on August 25, 1970.

The administrative hearing was commenced on June 2, 1971. Counsel for Zaoutis moved to terminate the proceedings as barred by the five year statute of limitations in 8 U.S.C. § 1256(a), relying also on the decision of Chief Judge Harris in *Singh v. I. & S.*, 313 F.Supp. 532 (N.D.Cal.) which had been decided on May 27, 1970. Decision was reserved on the motion and the hearing was "adjourned without date".

The hearing resumed on April 10, 1972. At the outset, the motion on the statute of limitations was denied, the administrative judge basing his ruling on the reversal by the Ninth Circuit Court of Appeals of the *Singh* decision below (456 F.2d 1092, cert. denied, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972)), which had taken place on February 24, 1972. Evidence was then taken and also at hearings on October 2, 1972, and February 7, 1973, at which time the hearing was closed.

By opinion and order dated October 15, 1973, the administrative judge found that the marriage of Zaoutis and Camacho was fraudulent, that he was not in fact eligible for adjustment of status, and that such adjustment was rescinded.

Zaoutis took an appeal, contending solely on the statute of limitations.

By order and opinion dated May 2, 1974, the Board rejected this contention and dismissed the appeal.

## 3.

It seems perfectly clear to me that it was on May 2, 1974, that it appeared "to the

satisfaction of the Attorney General" that Zaoutis "was not in fact eligible for . . . adjustment of status". Since this date was long after the five year limitation in 8 U.S.C. § 1256(a), the rescission of the adjustment of status of Zaoutis is barred by that limitation.

**4.**

It is agreed by both sides that there is no genuine issue as to any material fact. If the rescission by the Service was time barred, there must be summary judgment for movant-plaintiff Zaoutis. If the rescission is not time barred, there must be summary judgment for defendants.

**5.**

Decision turns on whether service on May 10, 1970, of a notice of intent to rescind is equivalent to a determination by the Attorney General that Zaoutis was not in fact eligible for adjustment of status. Defendants urge that it is; Zaoutis contends that it is not.

*Singh v. I. & S.* in the Ninth Circuit, above cited, fully supports the defendants but, after careful consideration and with great deference to the able Ninth Circuit panel, I cannot accept the result. The Ninth Circuit simply found the practical consequences of the statute to be "absurd" (456 F.2d at 1097). Such consequences, if true, do not justify rewriting the statute. As it stands, the statute has a plain bar to rescission. If this be an example of a bad policy, the solution is to ask Congress to change the statute.

The Third Circuit in *Quintana v. Holland*, 255 F.2d 161 (3d Cir. 1958), reaches a conclusion contrary to that of the Ninth. The reasoning of Judge Goodrich is more persuasive to me than that of the Ninth Circuit.

The Second Circuit does not appear to have considered the problem. *Pierno v. I. & S.,* 397 F.2d 949 (2d Cir. 1968) has been studied but does not seem in point.

**6.**

The defendants, by able counsel, have made convincing arguments that to apply the five year statute of limitations as written would lead to injustice and would be contrary to sound public policy. These arguments have merit but they should be addressed to Congress. As a judge, I should not rewrite the legislation.

A very great teacher has said (Frankfurter, Some Reflections on the Reading of Statutes, 47 Col.L.Rev. 527, 533 (1947)):

"Even within their area of choice the courts are not at large. They are confined by the nature and scope of the judicial function in its particular exercise in the field of interpretation. They are under the constraints imposed by the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy has lodged in its elected legislature. The great judges have constantly admonished their brethren of the need for discipline in observing the limitations. A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction."

The motion of plaintiff Zaoutis is granted. The cross-motion of defendants is denied. Settle Order.