Zheng Cheng ZHENG (A 72
435 929), Plaintiff,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Defendant.

No. 95 Civ. 8321 (PKL).

United States District Court,
S.D. New York.

July 19, 1996.

Bruno Joseph Bembi, New York City, for plaintiff.

F. James Loprest, Jr., Special Assistant United States Attorney, Southern District of New York, New York City, for defendant.

### *MEMORANDUM ORDER*

LEISURE, District Judge:

Before the Court is the motion of defendant Immigration and Naturalization Service (the "INS") to dismiss the complaint of plaintiff Zheng Cheng Zheng, pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. For the reasons stated below, the Court grants defendant's motion to dismiss.

### BACKGROUND

For purposes of this motion, the facts alleged in the complaint are taken as true.

Plaintiff, Zheng Cheng Zheng, was born in the People's Republic of China on September 30, 1974, and entered the United States in December 1991 without proper documents. On August 8, 1995, he filed an application with the INS to adjust his immigration status to that of a lawful permanent resident, pursuant to section 245 of the Immigration and Nationality Act of 1952, as amended. *See* 8 U.S.C. § 1255. Zheng's father was an alien who had already applied, on his own behalf, for adjustment of his immigration status under the Chinese Student Protection Act of 1992. *See* Pub.L. 102–404 § 2, 106 Stat.1969, 1969–71 (1992) (codified at 8 U.S.C. § 1255 note (1994) (Adjustment of Status of Certain Nationals of People's Republic of China)). Because plaintiff was under the age of twenty-one when he filed his application, his application was considered "derivative" of his father's. *See* 8 U.S.C. §§ 1101(b)(1), 1153(d). The advantage of such a derivative application is that plaintiff-applicant is entitled to the same order of consideration for adjustment of status as his father. *See* 8 U.S.C. § 1153(d).[1]

Currently, the immigration laws establish a quota system that only permits a certain number of immigrants from a particular region in the world to become lawful permanent residents in any given fiscal year. The flow of immigrants is controlled by the issuance of visa numbers to those whose turn has come up. Obtaining a visa number, which means that a visa is available if an application is approved, is one of the requirements for the adjustment of immigration status. *See* 8 U.S.C. § 1255(a)(3).

For plaintiff, this requirement was first satisfied on August 1, 1995. He applied for an adjustment of status one week later, and was informed by the INS that the application would likely take at least sixty days to process. The primary reason the process takes this long is that the INS is required to conduct fingerprint identification checks through the Federal Bureau of Investigation ("FBI") for all individuals over sixteen years of age who are seeking to adjust their immigration status. *See* Departments of Commerce, Justice, and State, The Judiciary, and Related Agencies Appropriations Act, 1995, Pub.L. No. 103–317, Title V, § 506(d), 1994 U.S.C.C.A.N. (108 Stat.) 1724, 1766 (1994) (codified at 8 U.S.C. § 1255 note (1994) (Fingerprint Checks)).

In an attempt to expedite his application, plaintiff paid a fee of $18.00 directly to the FBI to obtain a copy of his report. On September 26, 1995, he received the copy of the report indicating that he had no arrest record, and the next day he had the copy delivered to the INS. The INS, however, would not accept it as satisfying the need for FBI clearance. On September 30, 1995, while still waiting for the INS to finish processing his application, plaintiff turned twenty-one years of age and became ineligible to maintain an application derivative of his father's.[2]

Plaintiff now requests this Court to hold that the INS's refusal to consider the FBI report he submitted is unlawful.

**DISCUSSION**

I. *Jurisdiction is Assumed for Purposes of this Motion.*

In his complaint, plaintiff states that there is subject matter jurisdiction over this action pursuant to 8 U.S.C. § 1329, 28 U.S.C. §§ 1331, 1361, 2201, 2202, and 5 U.S.C. §§ 701–707. Without delving into a difficult analysis of this scattershot listing of statutory provisions, the Court assumes jurisdiction for the purposes of this motion. "On some

---

**1.** In other words, one advantage of a derivative application is that, in terms of position in the queue of applicants, it places the derivative applicant in the same position as the parent who applied earlier.

**2.** The Court notes that even though plaintiff may no longer file a derivative application, he may still submit an independent application for adjustment of status on the basis of his relationship with his father. Specifically, his father may file a petition, *see* 8 U.S.C. § 1154(a)(1)(B)(i), to classify plaintiff as the unmarried (twenty-one or older) son of a lawful permanent United States resident for immigrant visa purposes. *See* 8 U.S.C. § 1153(a)(2)(B). If the petition is approved, and an immigrant visa becomes available, plaintiff may then apply to adjust his status to that of a lawful permanent resident. *See* 8 U.S.C. § 1255(a)(3).

occasions ... considerations of judicial economy and restraint may persuade the court to avoid a difficult question of subject-matter jurisdiction when the case may be disposed of on a simpler ground." *Cantor Fitzgerald, L.P. v. Peaslee,* 88 F.3d 152, 155 (2d Cir. July 8, 1996) (citing *Browning–Ferris Indus. v. Muszynski,* 899 F.2d 151, 159 (2d Cir.1990)). "[A]s to subject matter jurisdiction, a court may assume the existence of such jurisdiction and adjudicate ... in favor of a defendant, without making a definitive ruling on jurisdiction." *In re DES Litig.,* 7 F.3d 20, 24 (2d Cir.1993) (construing *Browning–Ferris Indus.,* 899 F.2d at 159).

## II. *Plaintiff has Failed to State a Claim upon which Relief may be Granted*

■ In deciding defendant's Rule 12(b)(6) motion to dismiss, the Court accepts as true the material facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *See Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995) (citing *Hill v. City of New York,* 45 F.3d 653, 657 (2d Cir.1995)). A motion to dismiss must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

■ Judicial review in matters pertaining to immigration, however, is narrowly circumscribed. *See Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477–78, 52 L.Ed.2d 50 (1977). Control over this area is firmly embedded within the legislative and executive branches of government. *See Reno v. Flores,* 507 U.S. 292, 305, 113 S.Ct. 1439, 1448–49, 123 L.Ed.2d 1 (1993); *Landon v. Plasencia,* 459 U.S. 21, 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982); *United States v. Valenzuela–Bernal,* 458 U.S. 858, 864, 102 S.Ct. 3440, 3444–45, 73 L.Ed.2d 1193 (1982). Congress regularly makes rules in this area that would be unacceptable if applied to citizens, *see Flores,* 507 U.S. at 305–06, 113 S.Ct. at 1448–49; *Fiallo* 430 U.S. at 792, 97 S.Ct. at 1477–78; even

those that would amount to a denial of due process. *See Rahman v. McElroy,* 884 F.Supp. 782, 785 (S.D.N.Y.1995).

■ As a consequence, the INS, an administrative agency carrying out the statutory instructions of Congress, is entitled to judicial deference. "'[A]dministrative agencies are "free to fashion their own rules of procedure ... [in order] to discharge their multitudinous duties."'" *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978) (quoting *FCC v. Schreiber,* 381 U.S. 279, 290, 85 S.Ct. 1459, 1467, 14 L.Ed.2d 383 (1965) (quoting *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143, 60 S.Ct. 437, 441–42, 84 L.Ed. 656 (1940))). "Reviewing courts have therefore been cautioned 'against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress.'" *Rahman,* 884 F.Supp. at 787 (quoting *Vermont Yankee,* 435 U.S. at 525, 98 S.Ct. at 1202).

In *Rahman,* this Court demonstrated its hands-off approach towards INS procedures. There, the plaintiffs were informed by mail that only 55,000 visas were available for 110,000 applicants, and that they should apply for adjustment of immigration status as quickly as possible to assure their chances of possible visa issuance. The plaintiffs later learned that although they acted promptly, others who had responded later obtained interviews on their applications, while they did not. The allocation of the interviews was not, as had been implied, on a "first come first served" basis, but was essentially arbitrary. Yet the INS procedures were upheld. *See id.* at 783–784.

■ Thus, though it may seem troubling to have plaintiff's recent application for adjustment of status defeated by bureaucracy, it is not this Court's role to revamp the procedural system used by the INS. "It is not the province of the courts to insist that INS's interpretations of the Act result in the perfect immigration scheme, or even that they be the best interpretation possible." *De*

*Los Santos v. INS,* 690 F.2d 56, 60 (2d Cir.1982).

Neither *Sanchez–Trujillo v. INS,* 632 F.Supp. 1546 (W.D.N.C.1986), nor *Pierno v. INS,* 397 F.2d 949 (2d Cir.1968), cited by plaintiff in his memorandum of law in opposition to defendant's motion, governs the instant situation. While plaintiff contends that these cases stand for the proposition that a district court may retroactively approve a relative-based visa petition after an alien is no longer technically eligible for it, in both cases unusual events interrupting the normal investigation process were present. *See Sanchez–Trujillo,* 632 F.Supp. at 1554 (construing *Pierno,* 397 F.2d at 951). In *Sanchez–Trujillo,* the unusual event was a misstatement of law on the part of the INS. *See id.* In *Pierno,* the unusual event was the death of a spouse in a spousal-based adjustment application during an inordinately long background investigation. *See Pierno,* 397 F.2d at 951. In the case at bar, the need to obtain clearance from the FBI, which typically involves a sixty day waiting period, is a standard part of INS procedures and is most certainly not an unusual event.

Furthermore, the instant case can be distinguished from *Fano v. O'Neill,* 806 F.2d 1262 (5th Cir.1987). There, the plaintiff filed a derivative application under his father's application for permanent resident status, but became ineligible because he turned twenty-one during the fourteen-month wait for processing by the INS. The plaintiff alleged willful, wanton, and reckless conduct on the part of the INS, which did not offer any explanation for the delay. The court then denied the government's motion for summary judgment. *See id.* at 1266. In the instant case, however, the complaint makes no allegations of such reckless conduct. The fact that the INS followed a procedure, dictated by statute, of waiting for clearance from the FBI does not amount to a wanton, willful, and reckless delay.

Finally, the Court notes that for the INS to acquiesce to plaintiff's request, by allowing individuals seeking adjustment of status to supply their own copies of FBI reports, hardly seems a wise policy decision. The purpose of the background check is to ascertain that an applicant does not have a criminal record. It is not realistic to expect that those who do in fact have such records will not attempt to submit fraudulent documentation.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss plaintiff's complaint is HEREBY GRANTED. The action is HEREBY DISMISSED. Plaintiff is granted leave to amend his complaint. Any amendment to the complaint must be filed within 45 days of this Memorandum Order.

**SO ORDERED.**