**Limber and Margarita ZAPATA, Jointly & Severally/Husband & Wife, Plaintiff,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, and its District Director, Defendants**

**No. 98 Civ. 6066(MBM).**

United States District Court, S.D. New York.

Jan. 3, 2000.

**356**

Peter E. Torres, New York City, for plaintiffs.

Mary Jo White, United States Attorney for the Southern District of New York, F. James Loprest, Jr., Special Assistant United States Attorney, New York City, for defendants.

### OPINION and ORDER

MUKASEY, District Judge.

Limber and Margarita Zapata sue the Immigration and Naturalization Service and its District Director, and move for an injunction compelling defendants to reserve two immigration visas for plaintiffs and to rule promptly on plaintiffs' applications for adjustment of status. Defendants cross-move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or for judgment on the pleadings pursuant to Rule 12(c). For the reasons stated below, defendants' Rule 12(b)(1) motion is granted, and the case is dismissed.

### I.

#### A. Legal Background

■ An alien living in the United States may become a lawful permanent resident by applying for an adjustment of status. See 8 U.S.C. § 1255(a) (1994). In order to receive such an adjustment, the alien must be eligible to receive an immediately available immigration visa. See id.[1]

1. Section 1255(a) reads in relevant part as ˙ follows:

Of the several ways to become eligible to receive such a visa, only one is relevant to this case: each fiscal year, 55,000 visas are made available to natives of regions of the world from which immigration to the United States has historically been low. *See* 8 U.S.C. § 1153(c)(1) (1994). These 55,000 visas are typically referred to as "diversity visas." Eligibility for these visas is allocated through a program colloquially known as the "visa lottery," which takes place once every year. To enter the visa lottery, natives of "low-admission regions" apply to the State Department. From the applications it receives, the State Department randomly selects some people and notifies them that they are eligible to apply for diversity visas. *See generally* 22 C.F.R. § 42.33 (describing the visa lottery); *Rahman v. McElroy*, 884 F.Supp. 782, 784 (S.D.N.Y.1995) (same).

### B. Relevant Facts

In February 1997, Limber Zapata, a Peruvian citizen living in the United States, entered the 1998 visa lottery by mailing a form to the State Department. (Loprest Decl. Ex. A at 34) In August 1997, the State Department notified Zapata that his form had been selected and that he was therefore eligible to apply for a 1998 diversity visa. (*Id.* at 33)

On October 31, 1997, Zapata applied to adjust his status to permanent resident on the basis of his eligibility for a 1998 diversity visa. (*Id.* at 4, 8) Zapata's wife, Margarita Zapata, also sought to adjust her status, based on her husband's application. (*Id.* at 5) As part of their applications, the Zapatas allege, they mailed a copy of their fingerprints to the INS. (Compl.¶ 15)[2] On March 5, 1998, the INS requested that Limber Zapata appear at a March 30, 1998 interview. (Loprest Decl. Ex. A at 3) At the interview, the Zapatas were told that

their applications for adjustment of status could not be completed until after their fingerprints "clear[ed]." (Compl.¶ 14) After the interview, the Zapatas did not hear further from the INS. (*Id.* at ¶¶ 15–17)

The Zapatas brought this action on August 26, 1998. They noted that the 1998 visa lottery program would expire at the end of the fiscal year, on September 30, 1998. (*Id.* at ¶ 16) Moreover, the Zapatas stated that if Limber Zapata did not receive a 1998 diversity visa, their application for adjustment of status would fail because they had no basis for securing an immigration visa other than through the visa lottery. (*Id.* at ¶ 18; Torres Aff. ¶ 22) The Zapatas thus sought an injunction requiring the INS (1) to rule upon their application for an adjustment of status before September 30, 1998 and (2) to reserve for them two of the 55,000 diversity visas allocated for 1998. (Compl.¶¶ 23, 26) The Zapatas also sought attorney's fees and costs. (*Id.* at ¶ 26(c)) On September 1, 1998, the Zapatas sought an Order to Show Cause why that the injunction sought in their complaint should not be issued as a preliminary injunction. (Order to Show Cause at 1)

On September 10, 1998, defendants filed a memorandum of law in opposition to the Zapatas' request for a preliminary injunction, and cross-moved to dismiss the complaint or for judgment on the pleadings. (Gov't Mem. Opp'n at 1) At my request (8/23/99 Order), defendants filed an additional memorandum of law on October 8, 1999, addressing whether this case had become moot. (Gov't Supp. Mem. Further Opp'n at 3–7) Plaintiffs were given an opportunity to respond, but declined to do so. (Letter from Torres to the Court of 10/25/99)

---

The status of an alien ... may be adjusted ... to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa ... and (3) an immigrant visa is immediate-

ly available to him at the time his application is filed.

**2.** "Compl." refers to plaintiffs' verified complaint filed on August 26, 1998.

## II.

In *Browning–Ferris Indus. v. Muszynski*, 899 F.2d 151, 154–59 (2d Cir.1990), the Second Circuit held that in some circumstances a federal court may assume subject matter jurisdiction *arguendo* in order to decide a case on the merits. In adjustment of status cases such as this one, the standard practice under *Browning–Ferris* was to assume the existence of subject matter jurisdiction and proceed to the merits. *See, e.g., Kodza v. McElroy,* No. 96 Civ. 7417(LMM), 1996 WL 737201, at *4 (S.D.N.Y. Dec. 24, 1996); *Maldonado–Coronel v. McElroy,* 943 F.Supp. 376, 379–80 (S.D.N.Y.1996); *Zheng v. Immigration and Naturalization Serv.,* 933 F.Supp. 338, 339–40 (S.D.N.Y.1996). However, the Supreme Court has recently held that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 93–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Therefore, I may reach the merits of this case only if I have first determined that the court has subject matter jurisdiction over it.

■ Federal district courts do not have subject matter jurisdiction over moot cases. *See In re Kurtzman,* 194 F.3d 54, 58 (2d Cir.1999). "[A] case becomes moot ... when it is impossible for the court to grant any effectual relief whatever to a prevailing party." *Id.* (internal quotation marks and citations omitted); *accord Cook v. Colgate Univ.,* 992 F.2d 17, 19 (2d Cir. 1993) ("[A] case that is live at the outset may become moot when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.") (citation omitted).

■ In this case, the Zapatas seek an injunction compelling the INS (1) to rule upon their application for an adjustment of status before September 30, 1998 and (2) to refrain from issuing two of the 55,000 diversity visas allocated for 1998. *See supra.*

Because September 30, 1998 has passed, the INS can not now be required to rule by that date on the Zapatas' application for adjustment of status. Accordingly, the Zapatas' first request for injunctive relief is plainly moot, and this court may not exercise subject matter jurisdiction over it.

The Zapatas' second request for injunctive relief is similarly moot. Pursuant to 8 U.S.C. § 1154(a)(1)(G)(ii)(II)(1994 & Supp. III 1997) ("§ 1154"), aliens whose applications are randomly selected by the State Department during a particular fiscal year's visa lottery "remain eligible to receive visas only through the end of the specific fiscal year for which they were selected." The plain meaning of § 1154 is that after the fiscal year has ended on September 30, no diversity visas may be issued *nunc pro tunc* based on the results of the previous fiscal year's visa lottery.[3] Therefore, because September 30, 1998 has passed, 1998 diversity visas can no longer be issued to the Zapatas or to anyone else. Accordingly, I can not provide the Zapatas with "effectual relief" on either of their requests for injunctive relief, and their case therefore is moot.

■ This conclusion is not altered by the Zapatas' demand for attorney's fees and costs. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (holding that an "interest in attorney's fees is ... insufficient to create a[ ] ... case or controversy where none exists on the merits of the

---

**3.** This understanding of § 1154 is shared by the INS. *See* 3/21/96 Memorandum of INS Associate Commissioner Louis D. Crocetti, Jr., at 1. Because the INS is the agency charged with implementing the immigration laws, substantial deference would be accorded to its interpretation of § 1154 if that provision were at all ambiguous. *See I.N.S. v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982); *see generally Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

underlying claim") (citation omitted); *Cook*, 992 F.2d at 19 (applying this rule in the context of a mootness challenge to subject matter jurisdiction).

■ Similarly, none of the four exceptions to the mootness doctrine applies to this case.[4] First, the exception for class actions, *see Sosna v. Iowa*, 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), is irrelevant—this case was not brought as a class action.

Second, the exception for cases that have become moot because the defendants have voluntarily ceased their injury-causing conduct, *see United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), does not apply. This case is moot because a deadline has passed, not because of any change in defendants' policies or practices.

■ Third, the exception for wrongs capable of repetition yet evading review applies only when "there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Lewis*, 494 U.S. at 481, 110 S.Ct. 1249 (internal quotation marks and citations omitted). In this case, there can be no such expectation. For the Zapatas to be "subject to the same action again," one of them would have to be selected in a future visa lottery. This is an extraordinarily remote possibility. *See, e.g.*, 74 Interpreter Releases 1389, 1392 (September 15, 1997) (noting that 4.7 million people applied for the 55,000 1998 diversity visas); Mark Krikorian, *Lucky Visas*, Washington Post, March 14, 1996 (noting that 6.5 million people applied for the 55,000 1995 diversity visas).

■ Fourth, the collateral consequences exception does not apply to this case. Under this exception, mootness does not bar the exercise of jurisdiction over a claim when the conduct that forms the basis of the claim has left the plaintiff with two distinct injuries, one of which (the primary injury) can no longer be remedied, and one of which (the collateral injury) can still be remedied. *See generally* Erwin Chemerinsky, *Federal Jurisdiction* § 2.5.2 (3d ed.1999). However, the Supreme Court has held that the collateral consequences exception does not apply when a convicted felon challenges the constitutionality of his parole after it has been revoked and he has finished serving his prison sentence for violating its terms. *See Lane v. Williams*, 455 U.S. 624, 632–33, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982). The Court reasoned that the exception was inapplicable because

> [n]o civil disabilities … result from a finding that an individual has violated parole. At most, certain non-statutory consequences may occur; employment prospects, or the sentence imposed in a future criminal proceeding, could be affected. The discretionary decisions that are made by an employer or a sentencing judge, however, are not governed by the mere presence or absence of a recorded violation of parole; . . . .

*Id.* (citations omitted); *see also Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 986, 140 L.Ed.2d 43 (1998) (describing *Lane* as holding that "[i]t was not enough that the parole violations found by the revocation decision would *enable* the parole board to deny respondents' parole in the future. . . . For such violations [did] not *render* an individual ineligible for parole . . . .") (emphases added and citations omitted) (brackets in original).

In this case, defendants' failure to process Limber Zapata's visa application in a timely fashion prevented him from receiving a 1998 diversity visa. Because September 30, 1998 has already passed, this injury—his primary injury—can no longer be remedied. *See supra.* To be sure, the Zapatas may eventually suffer another harm on account of defendants' slow pro-

---

**4.** The parties have not argued that this case fits into one of these exceptions. Nonetheless, I must determine, *mea sponte*, whether any of these exceptions applies. *See The Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 648 (2d Cir.1998).

cessing of the visa application: they may not be able to obtain the adjustments of status that they want. However, an alien's lack of a diversity visa does not *require* the INS to reject his application for an adjustment of status. Instead, the lack of a diversity visa simply increases the likelihood of an INS rejection by denying the alien a possible basis upon which his adjustment of status could be granted.

The Zapatas also state that they may be deported. (Compl.¶ 18) However, neither does an alien's failure to obtain a diversity visa compel his deportation. Instead, failure to acquire a diversity visa only makes deportation more likely by eliminating one possible means of securing legal permanent residence. Moreover, if the Zapatas are eventually deported, it will only be because they choose to remain in the United States without a lawful basis for doing so. If a defendant's conduct will eventually cause collateral injuries to a plaintiff, but will do so only if the plaintiff violates the law, the collateral consequences exception does not apply. *See Spencer*, 118 S.Ct. at 987; *Lane*, 455 U.S. at 633, 102 S.Ct. 1322; *cf. O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (holding that "the case-or-controversy requirement is [not] satisfied by general assertions or inferences that in the course of their activities [a party] ... will be prosecuted for violating valid criminal laws").

Therefore, the collateral consequences exception to the mootness doctrine also does not apply. Accordingly, this case is

moot, and this court may not exercise jurisdiction over it.[5]

\*   \*   \*   \*   \*   \*

For the reasons stated above, defendants' motion to dismiss is granted and the complaint is dismissed.[6]

---

5. Although a judicial remedy is not available, the Zapatas are free to seek a legislative remedy. Indeed, in cases such as this, in which a resident alien does not receive a diversity visa for which he was eligible only because of the INS's slow processing of his application (Pl. Mem.Supp.Ex. A), Congress often has been willing to act. (Gov't Supp. Mem. Ex. A at 4–6) (collecting examples)

6. In an October 25, 1999, letter to the court, plaintiffs stated that they "would like a refund of their application fees." (Letter from Tor-res to the Court of 10/25/99) This request is properly addressed to the Executive Branch. *See* 22 C.F.R. § 42.71 ("A fee collected for the application for or issuance of an immigrant visa is refundable *only* if the principal officer at a post or the officer in charge of a consular section determines that the visa was issued in error or could not be used as a result of action by the U.S. Government over which the alien had no control and for which the alien was not responsible.") (emphasis added).