Teodora TICHEVA, Plaintiff,

v.

John ASHCROFT, in his official capacity only as Attorney General of the United States, Roseanne Sonchik, in her official capacity only as District Director of the Phoenix District of the United States Immigration and Naturalization Service, Karen Dorman, in her official capacity only as Officer–In–Charge of the Las Vegas Sub-office of the United States Immigration and Naturalization Service, John Rogers, in his official capacity only as a District Adjudications Officer employed in the Las Vegas Sub-office of the United States Immigration and Naturalization Service, the United States Immigration and Naturalization Service, and Does I through XX, inclusive, Respondent.

No. CV–S–02–0655–LRH–RJJ.

United States District Court,
D. Nevada.

Dec. 31, 2002.

Luther M. Snavely, Las Vegas, NV, for Ticheva, Teodora, Plaintiff.

Carlos A. Gonzalez, U.S. Attorney Office—LV, Las Vegas, NV, for Ashcroft, John, Dornan, Karen, Rogers, John, Sonchik, Roseane, Defendants.

## ORDER

HICKS, District Judge.

Before the Court is Defendants' motion to dismiss for failure to state a claim and for lack of jurisdiction over the subject matter (# 3); Plaintiff's opposition, and in the alternative, counter-motion to amend the complaint and counter-motion for summary judgment (# 4–6); Defendants' response to the cross-motion for summary judgment (# 7); and Plaintiff's reply to Defendants' response (# 8).

### I. Factual and Procedural Background

The Plaintiff, a native and citizen of Bulgaria who resides in the United States applied for a Diversity Immigrant Visa pursuant to the provisions of section 203 of the Immigration and Naturalization Act, 8 U.S.C. § 1153(c). Essentially, the program is a "visa lottery" whereby aliens from "low-admission regions" who otherwise meet the program's qualifications may apply once a year to the Department of State to register for a diversity visa. Once an individual's name is chosen in the lottery, that person becomes eligible for consideration after filing an immigrant visa application pursuant to 22 C.F.R. § 42.33.

On April 19, 1999, the Plaintiff was notified by the State Department that she had won the lottery, and was selected for further consideration in the Diversity Visa Program for fiscal year 2000, which ran from October 1, 1999 to September 30, 2000. Plaintiff was then assigned a program case number, which is used to determine when the applicant actually becomes eligible for adjustment of status. An ad-

justment of status interview was conducted by District Adjudications Officer John Rogers in April of 2000. According to the Defendants, "[i]t was determined at that time, that although Plaintiff's adjustment packet was complete, she was not eligible to adjust at that time because her number that had been assigned to her by the State Department was not current." (Mot.Dismiss, p. 2). At this point, the parties' versions of the facts diverge. Defendants contend that Plaintiff's counsel "was advised to keep an eye on the visa numbers and to be sure the Plaintiff adjusted her status after the number became current but before the end of the fiscal year which ended on September 30, 2000." (Mot. Dismiss p. 2 n. 1). According to the Plaintiff, however, Mr. Rogers assured her that "he would approve her for her Lawful Permanent Residence as soon as she became eligible to receive an immigrant visa." (Opp'n, p. 3). Plaintiff contends that Mr. Rogers went so far as to create a reminder for himself, labeled a "Call–Up Date," to send a request for the Plaintiff Visa to the State Department's National Visa Center on June 1, 2000. (Opp'n, ex.6).

In May 2000, Plaintiff became eligible for a Visa. Plaintiff contends that her Counsel, Peter Ashman, Esq., notified the Immigration and Naturalization Service ("INS") by fax machine that the Plaintiff was eligible for adjustment of status. The Defendants claim no such fax was ever received.

Apparently no action was taken by either party until Plaintiff's next interview with Mr. Rogers on April 9, 2001. Thereafter, the Defendants informed the Plaintiff that she would not be approved for a Visa as her status had never been adjusted and the deadline had passed on September 30, 2000.

On May 8, 2002, Plaintiff filed a complaint for injunctive relief requesting that the Court compel the INS to process her application. Defendants moved to dismiss, claiming Plaintiff's complaint fails to state a claim and that the Court lacked jurisdiction over the subject matter. Plaintiff subsequently filed an opposition/motion to amend/summary judgment motion.

## II.  Analysis

The Plaintiff's complaint is based on mandamus jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. It is within the discretion of the court to issue mandamus if "(1) the plaintiff's claim is clear and certain; (2) the duty of the officer is 'ministerial and so plainly prescribed as to be free from doubt;' and (3) no other adequate remedy is available." *Fallini v. Hodel,* 783 F.2d 1343, 1345 (9th Cir.1986) (citations omitted). "Whether each element of the three-part mandamus test is satisfied is a question of law." *Id.*

To the Court's knowledge, this is a case of first impression in the Ninth Circuit. In fact, the only circuit-level court to address this issue was the Seventh Circuit in *Iddir v. I.N.S.,* 301 F.3d 492 (7th Cir.2002). There, the Seventh Circuit held that the INS had no duty-the second element of the mandamus test-to adjudicate Diversity Visa applications after the end of the fiscal year, and as a result, the court lacked mandamus jurisdiction. *See id.* at 500. To support its holding, the Court noted that "the statute unequivocally states that the applications only remain eligible 'through the end of the specific fiscal year for which they were selected.'" *Id.* at 501 (quoting 8 U.S.C. § 1154(a)(1)(I)(ii); 8 U.S.C. § 1153(c)(1); 22 C.F.R. § 42.43(e) (*sic* )). Based on this statutory deadline, the

Court held that the INS lacked the statutory authority to award the relief sought by the plaintiffs.[1]

In a concurrence, Chief Judge Flaum, while agreeing with the majority's ultimate judgment, noted that he preferred the district court's analysis, which found that the INS lacks the capability or *power* to issue visas after the fiscal year for which they were selected to apply ends, rather than the *duty* to issue visas. *See id.* at 502. Since no viable remedy was available, according to Chief Judge Flaum, the plaintiffs claims should have been "dismissed for mootness, not for lack of mandamus jurisdiction." *Id.*

In *Nyaga v. Ashcroft,* 186 F.Supp.2d 1244, 1256 (N.D.Ga.2002), on the other hand, the district court ordered the INS to adjudicate the plaintiff's diversity visa application as if the fiscal year had not ended due to the fact that the "sole reason why [the plaintiff's] application was not timely considered [was] the government's failure to act or follow through on processing the application." *Id.* at 1255. While the Government's conduct no doubt played a substantial role in the court's ultimate decision, the district court, like the circuit court in *Iddir,* addressed the language of both the statute and the regulations. In granting the order, the district court differed on the appropriate interpretation of the statutory language in section 8 U.S.C. § 1154(a)(1)(G)(ii). Specifically, the *Nyaga* court held that the language at issue "concerns the eligibility of the alien to receive the visa," not the INS's ability to issue the visa. *Id.* In fact, the court found that "no language in the statute prohibits the government from issuing diversity visas out of time." *Id.* at 1256. In a footnote to this statement, however, the district court was forced to admit that the language contained in 22 C.F.R § 42.33(a)(1), "came close" to explicitly prohibiting the Government from issuing out-of-time visas.[2] *Nyaga,* 186 F.Supp.2d at 1256 n. 13. Again, however, the *Nyaga* court dismissed the instruction as relating only to eligibility. *See id.* Finally, as the Defendants note, the court restricted its holding to the especially "exceptional" facts before it. *See id.* at 1256.

While these cases and the case at bar present an unpleasant picture of the INS and what appears to be its bureaucratic inefficiency and ambivalence, before the Court may address the facts of this case, it must decide the proper interpretation of the statutes and regulations. Specifically, the Court must address whether a remedy is available or whether the INS is without power to issue a visa after the deadline for eligibility has passed.

In viewing the statute and relevant regulations, the Court can come to no other conclusion but to agree with the concurrence in *Iddir,* which argued that the INS is without power to grant visas after the specified deadline. As noted in the discussion of the previous cases, both the statute and the regulations state that eligibility

---

1. Other courts that have held similarly include *Iddir v. I.N.S.,* 166 F.Supp.2d 1250, 1259–60 (N.D.Ill.2001); *Zapata v. I.N.S.,* 93 F.Supp.2d 355, 358 (S.D.N.Y.2000); *Sadowski v. I.N.S.,* 107 F.Supp.2d 451, 454 (S.D.N.Y.2000). *But see Paunescu v. I.N.S.,* 76 F.Supp.2d 896, 902–03 (N.D.Ill.1999); *Marcetic v. I.N.S.,* 1998 WL 173129 (N.D.Ill.).

2. Specifically, the regulation states that "[t]he eligibility for a visa under INA 203(c) ceases at the end of the fiscal year in question. Under no circumstances may a consular official issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility." 22 C.F.R. § 42.33(a)(1).

terminates at the end of the fiscal year. While these clauses may explicitly address only the eligibility of the participants rather than the INS's power to grant visas, that fact is not determinative of the issue as the *Nyaga* court would have us believe. Logically, the INS can only issue visas to those individuals who are eligible at the time. Once an individual's eligibility ceases, the INS cannot issue a visa regardless of whether the individual was previously eligible. Therefore, even if the INS had visas to distribute to eligible candidates subsequent to the deadline, the fact that the Plaintiff in this case lost her eligibility on September 30, 2000, negates the INS's power to issue the visa.

Based on the fact that the INS is powerless to issue the visa, there is no possible relief of which the court could grant that would address Plaintiff's claim. As such, Plaintiff's claim is moot. And because federal courts do not have jurisdiction to hear cases that are moot, this action must be dismissed.

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (# 3) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's counter-motion to amend (# 5) and counter-motion for summary judgment (# 6) are DENIED.