**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DAIVE MICKEVICIUTE,

  Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,

  Respondent.

No. 02-9516

---

PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION APPEALS
(A72 453 377)

---

Submitted on the briefs:

Jim Salvator, Lafayette, Colorado, for Petitioner.

Emily Anne Radford, Assistant Director, and Joshua E. Braunstein, Attorney, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for Respondent.

---

Before **LUCERO**, **BALDOCK**, and **McCONNELL**, Circuit Judges.[*]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. 34.1. The case is therefore ordered submitted without oral argument.

**BALDOCK**, Circuit Judge.

Petitioner Daive Mickeviciute is a native and citizen of Lithuania who entered the United States on a visitor's visa in 1991. The Immigration and Naturalization Service (INS) initiated deportation proceedings against her after she overstayed her visa. Petitioner applied for asylum. The immigration judge denied Petitioner's asylum application and determined she was deportable. The Board of Immigration Appeals (BIA) upheld the immigration judge's decision. We affirmed. See Mickeviciute v. Immigration and Naturalization Serv., No. 00-9535, 18 Fed. Appx. 772, 2001 WL 1048535 (10th Cir. Sept. 13, 2001) (unpublished).

After the BIA's decision, but before this Court affirmed, Petitioner filed a motion with the BIA to reopen her deportation proceedings. Petitioner argued she was entitled to a reopening under Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), because her former counsel rendered ineffective assistance in handling her diversity visa application. In 1994, Petitioner applied for a visa under the Diversity Visa Lottery Program. Congress instituted this program to distribute visas to persons from countries that historically have low rates of immigration to the United States. See 8 U.S.C. § 1153(c)(1).

> The statute directs the Attorney General to calculate immigration rates
> for the past five years and identify low-admission states and regions.
> 8 U.S.C. §§ 1151(a), 1153(c). The diversity visas are then allotted,
> based on formula, to persons from the low-admission states or regions.
> 8 U.S.C. § 1153(c). The program operates on a fiscal year, whereby only

> a certain number of visas are available to the immigrants from the low-admission states or regions. Id. . . . Applications far exceed[] allotments. . . . The eligible immigrants must submit an application for the lottery during a specified time period, usually thirty days. See, e.g., 59 Fed. Reg. 61918. A computer randomly selects the set number of applicants from the pool, hence the term "lottery". 22 C.F.R. § 42.33(c). The lottery winners are notified in the summer and are instructed on how to apply for an immigrant visa. See, e.g., 61 Fed. Reg. 58730, 58731. The lottery visa offer is only good until the last day of the fiscal year in which the application was submitted. 22 C.F.R. §§ 42.33(e), (g). Thus, a 1995 applicant, notified in the summer of 1995, had from October 1995 until September 30, 1996 to complete the application process. 59 Fed. Reg. 61918, 61919-20. Persons selected for [diversity] visas, who reside in the United States, may petition for an adjustment of status under 8 U.S.C. § 1255(a). The caveat is that the applicant must complete the process, application and adjudication, before time expires because a visa can only be issued during the relevant fiscal year. 8 U.S.C. § 1151(a)(3); 8 U.S.C. § 1153(c)(1), 8 U.S.C. § 1154(a)(1)(I)(ii).

Iddir v. Immigration and Naturalization Serv., 301 F.3d 492, 494 (7th Cir. 2002).

Petitioner alleges that after she was randomly selected in the visa lottery, her attorney failed to follow up on her diversity visa interview request, thereby depriving her of the opportunity to receive a diversity visa. She alleges her attorney rendered ineffective assistance in her deportation proceedings because he failed to inform the BIA through a motion to remand that she was selected in the diversity visa lottery. Petitioner requested the BIA to reopen her deportation proceedings and direct the immigration judge to place her case in administrative closure until she has had a reasonable opportunity to petition a federal court for relief.[1] Petitioner wants a federal court to order the National

---

[1] Administrative closure of a case temporarily removes the case from an

(continued...)

Visa Center to consider her diversity visa interview request as timely filed in view of her previous attorney's ineffective assistance.

The BIA found Petitioner met the preliminary requirements for supporting her motion with an ineffective assistance claim under Matter of Lozada.[2] The BIA nevertheless denied Petitioner's motion to reopen after determining it did not have the power to grant Petitioner the ultimate form of relief she sought. Petitioner seeks review of the BIA's decision denying her motion to reopen. Because the INS commenced deportation proceedings against Petitioner before the Illegal Immigration Reform and Immigrant Responsibility Act's (IIRIRA) April 1, 1997 effective date, and the order of

---

[1](...continued)
immigration judge's calendar or from the BIA's docket. "'The administrative closing of a case does not result in a final order. It is merely an administrative convenience which allows the removal of cases from the calendar in appropriate situations.'" In re Gutierrez-Lopez, 21 I. & N. Dec. 479, 480 (BIA 1996) (quoting Matter of Amico, 19 I. & N. Dec. 652, 654 n.1 (BIA 1988)). The dissent suggests even this form of relief is not available to Petitioner because a case cannot be administratively closed if opposed by either party. See dissent at 3 n.1. But the INS did not oppose administrative closure, or Petitioner's motion to reopen, before the BIA. Only on appeal before this panel has the INS objected. The BIA could not have relied on this ground in its decision denying Petitioner's motion to reopen. We express no opinion as to the BIA's option of relying on the INS' current opposition to administrative closure as a ground to deny Petitioner's motion to reopen on remand.

[2] Under Matter of Lozada, a motion based on a claim of ineffective assistance of counsel must be supported by (1) the aggrieved party's affidavit setting forth the agreement that was entered into with former counsel and what counsel did or did not represent to the respondent in this regard; (2) evidence that former counsel was informed of the allegations and allowed the opportunity to respond; and (3) evidence the aggrieved party filed a complaint with appropriate disciplinary authorities, and if not, why not. Matter of Lozada, 19 I. & N. Dec. at 639.

deportation was entered after October 31, 1996, we have jurisdiction to review the BIA's decision under the pre-IIRIRA version of 8 U.S.C. § 1105a, as amended by the transitional rules. See Itaeva v. Immigration and Naturalization Serv., 314 F.3d 1238, 1240 (10th Cir. 2003); Osei v. Immigration and Naturalization Serv., 305 F.3d 1205, 1207 n.1 (10th Cir. 2002); see also Aguilera v. Kirkpatrick, 241 F.3d 1286, 1290-91 (10th Cir. 2001) (holding 8 U.S.C. § 1252(g) does not preclude appellate review of motions to reopen).

We review the BIA's decision on a motion to reopen for an abuse of discretion. Immigration and Naturalization Serv. v. Abudu, 485 U.S. 94, 104-05 (1988); Dulane v. Immigration and Naturalization Serv., 46 F.3d 988, 994 (10th Cir. 1995). The BIA abuses its discretion when its decision "'provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements.'" Osei, 305 F.3d at 1208 (quoting Zhao v. United States Dep't of Justice, 265 F.3d 83, 93 (2d Cir. 2001)). The BIA may deny a motion to reopen on at least three independent grounds. Abudu, 485 U.S. at 104-05. "First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought." Id. at 104. "Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence, or, in an asylum application case, that the movant has not reasonably explained his failure to apply for asylum initially." Id. at 104-05 (internal citations omitted). Third, in cases in which the ultimate grant of relief is

discretionary, the BIA may determine the movant would not be entitled to the discretionary grant of relief. Id. at 105.

In denying Petitioner's motion to reopen, the BIA's entire analysis consisted of the following:

> [Petitioner] is not seeking a form of relief from deportation that is within the power of this Board to grant. In fact, [Petitioner] has acknowledged that she will have to pursue the relief she seeks in federal court (Brief at 3). [Petitioner] wants the Board to reopen deportation proceedings and hold them in abeyance until she has had a fair and reasonable opportunity to petition the federal court for the relief she seeks. She wants the federal court to order the National Visa Center to consider her diversity visa interview request as timely filed in view of her previous counsel's ineffective assistance with the diversity visa application process.
>     The Board has exercised the authority it has in this case by issuing a decision on [Petitioner's] appeal from the decision of the Immigration Judge. See generally 8 C.F.R. § 3.1. It would not be appropriate for us to reopen the proceedings for the sole purpose of permitting [Petitioner] to remain in the United States while she seeks relief in the federal courts. See 8 C.F.R. § 3.2(c).

We are unable to determine from the BIA's language and mere citation to 8 C.F.R. § 3.2(c) on which of the Abudu grounds the BIA relied to deny Petitioner's motion to reopen. We cannot perform a meaningful review where the Board does not sufficiently articulate its reasoning. See Dulane, 46 F.3d at 995 (noting that releasing the BIA of its obligation to articulate a reasoned basis for its decisions would eliminate any guaranty of rationality and foreclose meaningful review).[3] We are not at liberty to search the law and

---

[3] The dissent argues Petitioner understood the BIA's decision as holding that she failed to establish prima facie eligibility for the underlying substantive relief she sought.

(continued...)

-6-

the record for reasoning to support the BIA's decision because "'a court may not uphold an agency action on grounds not relied on by the agency.'" St. Anthony Hosp. v. United States Dep't of Health and Human Servs., 309 F.3d 680, 699 (10th Cir. 2002) (quoting Alameda Water & Sanitation Dist. v. Browner, 9 F.3d 88, 91 (10th Cir. 1993)).

Logical reasons exist to deny a motion to reopen where the BIA cannot grant Petitioner the ultimate relief she seeks. But recently we cautioned the BIA that departures from the usual Matter of Lozada requirements on motions to reopen must be supported by reasoned explanation. See Osei, 305 F.3d at 1208-10 (holding BIA abused its discretion in denying a motion to reopen on grounds of ineffective assistance where BIA supported denial by mere citation to 8 C.F.R. § 3.2(c), BIA had not previously based denial of such a motion on § 3.2(c), and BIA provided no explanation for changing course). We therefore remand to the BIA with instructions to explain whether its lack of authority to grant the ultimate relief Petitioner requests constitutes (1) a failure to establish prima facie eligibility for the underlying substantive relief Petitioner seeks; (2) a failure to introduce previously unavailable, material evidence; or (3) a failure to establish entitlement to discretionary relief. See Abudu, 485 U.S. at 104-05. Alternatively, the

---

[3](...continued)

See dissent at 3 n.1. We are not so sure. Petitioner's opening brief does not discuss whether she established a prima facie case. Instead, Petitioner argues the BIA erred by stating it was incapable of providing her relief because the BIA had the power to reopen and administratively close her case. In any event, whether Petitioner can glean enough meaning from the BIA's decision to mount an appeal does not determine whether we, as the reviewing court, have enough information to conduct a meaningful review.

BIA can decide, with reasoned explanation, that petitioners seeking a motion to reopen under Matter of Lozada must demonstrate as a new requirement that the BIA itself has authority to grant the ultimate substantive relief from deportation the petitioner seeks. See Osei, 305 F.3d at 1208-10.

The dissent argues we can discern enough from the BIA's decision to infer the BIA held that Petitioner did not establish a prima facie case for relief. But we think the dissent goes much further than a "fair reading" to "reasonably discern" what the BIA meant in its order. See dissent at 3. The dissent spends considerable effort explaining possible grounds to support the BIA's decision. See dissent at Section II. The dissent's extended reasoned analysis simply proves our point, however, because not one shred of the dissent's reasoning to deny Petitioner a motion to reopen appears in the BIA's opinion. Had the BIA given such a reasoned explanation of its decision, we would have no need to remand. An agency's cursory explanation with a mere citation to a regulation without even designating upon which part of the regulation the agency relies leaves courts to do as the dissent and the INS's brief do--manufacture reasoning to support an agency decision. This we cannot do. St. Anthony Hosp., 309 F.3d at 699; see also Double J. Land & Cattle Co. v. United States Dep't of Interior, 91 F.3d 1378, 1383 (10th Cir. 1996) ("When an agency makes a decision, the grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record.") (internal quotation and citation omitted); Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1575 (10th Cir. 1994)

("The agency must make plain its course of inquiry, its analysis and its reasoning. After-the-fact rationalization by counsel in briefs or argument will not cure noncompliance by the agency with these principles.") (internal citation omitted).[4]

Beyond giving an explanation not provided by the BIA, the analysis in Section II

---

[4] We also are concerned that the BIA's cursory explanation raises questions about our jurisdiction. Although not challenged by either party, we have an independent obligation to examine our own jurisdiction. Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1274 (10th Cir. 2001). As stated above, the transitional rules under IIRIRA govern this case. See supra at 4-5. Sections 309(c)(4)(E) and (G) of IIRIRA's transitional rules preclude judicial review of any decision "under" certain sections enumerated therein. On its face, the BIA's decision in this case does not appear to deny Petitioner's motion to reopen based on any of the sections enumerated in § 309(c)(4)(E) or (G). Thus we exercise jurisdiction to remand for further explanation. See, e.g., Prado v. Reno, 198 F.3d 286, 291-92 (1st Cir. 1999) (holding § 309(c)(4)(E) did not preclude judicial review over BIA's denial of a motion to reopen because BIA denied the motion under 8 C.F.R. § 3.2(c)(2), not Immigration and Nationality Act § 245); Luis v. Immigration and Naturalization Serv., 196 F.3d 36, 40 (1st Cir. 1999) (holding § 309(c)(4)(E) did not preclude judicial review over BIA's denial of a motion to reopen because the BIA denied the motion under 8 C.F.R. § 3.2(a), not on a section enumerated in § 309(c)(4)(E), and the decision was not discretionary but an uncontested factual determination); Stewart v. Immigration and Naturalization Serv., 181 F.3d 587, 594-95 (4th Cir. 1999) (holding court had jurisdiction to review BIA's decision denying a motion to reopen because it was a decision under § 242B(e)(2)(A) rather than a decision under a section enumerated in § 309(c)(4)(E)); Arrozal v. Immigration and Naturalization Serv., 159 F.3d 429, 431-32 (9th Cir. 1998) (holding court had jurisdiction to hear an appeal from the BIA's denial of a motion to reopen under § 241(a)(2) of the Immigration and Nationality Act because § 241(a)(2) is not one of the enumerated sections listed in § 309(c)(4)(E)). Because our jurisdiction in part depends on the basis for the BIA's decision, we remind the BIA that to the extent it fails to adequately articulate the grounds on which it denies relief, our jurisdiction may be difficult to ascertain. See Stewart, 181 F.3d at 595 ("A reviewing court . . . must examine the basis for the BIA's decision rather than the end result of the BIA's decision to determine whether the decision is "under" a section listed in § 309(c)(4)(E) that precludes judicial review.") (emphasis in original).

of the dissent is irrelevant to our difficulty with the BIA's decision. We do not hold

Petitioner is entitled to a diversity visa, or that any court even has jurisdiction to

adjudicate such a claim. We do not hold that the BIA is required to reopen proceedings

and the INS must grant administrative closure whenever an alien claims she will seek

relief in another forum. See dissent at 10. More importantly, we do not hold the BIA

abused its discretion by denying the motion to reopen in this case. See dissent at 1, 5.

We agree with the dissent that many defensible reasons could support such a ruling. We

maintain merely that such reasons must come from the BIA in the first instance, and we

remand for that explanation. See St. Anthony Hosp., 309 F.3d at 699; Dulane, 46 F.3d at

995; Cf. United States v. Stumpf, 938 F.2d 172, 175 (10th Cir. 1991) (remanding to

district court for explanation of upward departure under sentencing guidelines to permit

meaningful review; appellate court would not "rationalize" district court's decision to

depart).

The Supreme Court recently reminded the appellate courts that agencies should be

the primary decision makers over matters which Congress has vested in their authority.

See Immigration and Naturalization Serv. v. Ventura, --- U.S. ----,123 S. Ct. 353, 355

(2002) (holding circuit court should have remanded to BIA to determine whether

conditions in Guatemala had changed, rather than make that decision itself). "A court of

appeals is not generally empowered to conduct a de novo inquiry into the matter being

reviewed and to reach its own conclusions based on such an inquiry. . . . Rather, the

-10-

proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Id. at 355 (internal quotation and citation omitted, emphasis added); see also Olenhouse, 42 F.3d at 1575 ("If the agency has failed to provide a reasoned explanation for its action, . . . the reviewing court may supplement the record or remand the case to the agency for further proceedings. . . . It may not simply affirm.") (internal citations omitted). Although Ventura remanded for the BIA to make a factual determination, we believe the BIA, not the Tenth Circuit Court of Appeals, should have the first opportunity to "bring its expertise to bear upon the matter; [] evaluate the evidence; [] make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." Id. at 355-56.

The dissent argues this case is the opposite of Ventura because here, the dissent would affirm the agency decision whereas in Ventura, the Ninth Circuit reversed the agency and made a decision on the merits itself. See dissent at 4. But honoring an agency's authority is not measured by whether we reverse or affirm the agency's decision. Rather, we safeguard agency decision making by ensuring that the agency itself makes the decisions entrusted to its authority based on grounds articulated by that entity. Because an agency has a duty not only to reach an outcome, but to explain that outcome, we intrude on the agency's authority not only by reaching a certain result on the merits as the Ninth Circuit did in Ventura, but also by supporting a result reached by the agency with

-11-

reasoning not explicitly relied on by the agency. See Securities and Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947) (noting that a court reviewing an administrative agency decision must judge the decision's propriety solely on the grounds the agency invoked: "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.").

Finally, the dissent takes us to task for "consum[ing] legal and administrative resources, and produc[ing] delay." Dissent at 4-5. Although our resolution may seem to accomplish little more than delay, preservation of the process and the distinct functions of the executive and judicial branches override the need for the speedy resolution of any particular case. See Chenery Corp., 332 U.S. at 196. We recognize the dissent's analysis is emotionally appealing. Petitioner has managed to overstay her visa for approximately ten years, and has little prospect of being able to remain in this country legally. But we must resist the temptation of stepping out of our limited judicial role even where resolving the merits ourselves may seem an easier, more efficient, and more palatable course.[5]

_____

[5] The dissent also argues Osei is distinguishable because in that case the petitioner claimed the results of the underlying asylum claim were fundamentally unfair because of ineffective assistance of counsel. See dissent at 10. Although Petitioner does not argue counsel was ineffective in presenting her asylum claim, she does argue counsel was

(continued...)

-12-

For the reasons stated above, we remand to the BIA for further explanation of its decision denying Petitioner's motion to reopen. The BIA need not accept further briefing from the parties.

REMANDED WITH INSTRUCTIONS.

---

[5](...continued)
ineffective during the deportation proceedings because he failed to inform the BIA she won the diversity visa lottery. Counsel could have sought a motion to remand to hold Petitioner's deportation proceedings in abeyance until her diversity visa application was processed. We express no opinion as to the merits of Petitioner's ineffective assistance claim, we note only that like the petitioner in Osei, Petitioner is arguing her counsel's ineffective assistance during the deportation proceedings resulted in a final order of deportation under which she would not be laboring had counsel rendered effective assistance, in violation of her due process rights.

-13-

No. 02-9516, <u>Daive Mickeviciute v. Immigration and Naturalization Service</u>

**McConnell**, **Circuit Judge**, **dissenting**.

A decision not to reopen deportation proceedings is in the discretion of the agency, and must not be overturned unless that discretion is abused. <u>INS v. Abudu</u>, 485 U.S. 94 (1988). An abuse of discretion may be found only when the Board's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." <u>Osei v. INS</u>, 305 F.3d 1205, 1208 (10th Cir. 2002) (citations omitted). I cannot agree with the panel majority that this high standard has been satisfied.

## I.

When reviewing the decision of an administrative agency, such as the Board of Immigration Appeals (BIA), the panel majority rightly insists that we may not rely on grounds not relied on by the agency. Op. at 7, quoting <u>St. Anthony Hosp. v. United States Dep't of Health and Human Servs.</u>, 309 F.3d 680, 699 (10th Cir. 2002). But the Supreme Court has cautioned us not to take that principle to hypercritical extremes. "While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." <u>Bowman Transportation Inc. v. Arkansas-Best Freight Sys., Inc.</u>, 419 U.S. 281, 285-86 (1974) (citations omitted). <u>See</u> <u>Curtis, Inc. v. ICC</u>, 662 F.2d 680, 685 (10th Cir. 1981).

In this case, the BIA denied Petitioner's motion to reopen her deportation

proceedings on the ground that she "is not seeking a form of relief from deportation that is within the power of this Board to grant." A.R. at 3. The Board cited the provision of the Code of Federal Regulations governing motions to reopen deportation proceedings, 8 C.F.R. § 3.2(c), which provides that any such motion must be "accompanied by the appropriate application for relief." Id. Petitioner, however, was not seeking any substantive relief from the BIA. Rather, as the BIA explained, Petitioner sought to delay her deportation "for the sole purpose of permitting [her] to remain in the United States while she seeks relief in the federal courts." Id.

The panel majority states that it is unable to determine from this opinion which of the several recognized grounds for denying a motion to reopen the BIA relied upon. Op. at 6. I respectfully disagree. One of the recognized grounds for denying a motion to reopen is that "the movant has not established a prima facie case for the underlying substantive relief sought." Abudu, 485 U.S. at 104. Under a fair reading of the BIA's opinion, we can "reasonably discern" that when the BIA stated that the movant "is not seeking a form of relief from deportation that is within the power of this Board to grant," A.R. at 3, it meant that the movant had not stated "a prima facie case for the underlying substantive relief sought." Black's Law Dictionary (7th ed. 1999) defines "prima facie case" as a "party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." The BIA explained why it had no authority, based on Petitioner's allegations, to rule in her favor. In my opinion, that is clear enough.

Accordingly, contrary to the panel majority, I do not believe that we are "unable" to discern the rationale for the BIA's decision. Op. at 6. We have not been asked to affirm on the basis of a legal theory "that the agency itself has not given," Bowman Transportation, 419 U.S. at 285-86, or to "search the law and the record for reasoning to support the BIA's decision." Op. at 6-7. The BIA's explanation may have been brief, but it was clear, and it was not unreasonable.[1]

The majority contends that affirming the BIA would constitute improper judicial intrusion in the agency's domain as proscribed by INS v. Ventura, — U.S. —, 123 S.Ct. 353 (2002). This case, however, is virtually the *opposite* of Ventura. In Ventura, the Ninth Circuit had *reversed* the BIA on a highly contestable and sensitive factual basis that was expressly not resolved by the agency, and the Supreme Court held that the appellate court must not invade the agency's delegated authority by deciding the question itself. Id. at 355-56. Here, by contrast, I propose that we *affirm* the BIA on precisely the grounds

[1] Revealingly, Petitioner's argument in this Court is not that the agency's rationale cannot be discerned, but that it was incorrect. Petitioner argues that "contrary to the Board's reasoning, [she] was seeking a form of relief that was well within the power of the Board to grant. The Board could have (and should have) remanded the case to the immigration court for administrative closure." Pet. Br. 10. But see id. at 11 (noting that "a case may not be administratively closed if opposed by either of the parties," thus calling into question whether even this form of relief is actually available.) In other words, Petitioner claims that the BIA's authority to postpone deportation is sufficient in itself to warrant an order reopening her case, without regard to whether the Board has authority to rule on her underlying substantive claim. This demonstrates that Petitioner had no difficulty understanding the Board's rationale.

stated by the agency.  This cannot be construed as an invasion of the agency's authority.

It is difficult to see what purpose is served by a remand in this case. The panel majority instructs the BIA to explain whether its lack of authority to grant the ultimate relief requested constitutes a failure to establish a prima facie case, or, alternatively, to explain what other grounds it relied upon.  Op. at 7.  However, since Petitioner did not state a prima facie case, it is hard to imagine what the BIA could possibly do on remand other than to reissue the identical opinion, substituting the words "prima facie case for the underlying substantive relief sought" for the words "relief from deportation that is within the power of this Board to grant." Nothing will have been accomplished except to consume legal and administrative resources, and produce delay.

A pointless remand is bad enough in the ordinary administrative law context, but as the Supreme Court has noted, "the reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context." <u>Abudu</u>, 485 U.S. at 110. "There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." <u>Id.</u> at 107. "Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." <u>Id.</u> at 108. Thus, a reviewing court may

overturn the BIA's decision not to reopen a deportation proceeding "only upon a showing of the clearest abuse of discretion." Id. at 107 n.11, quoting Duval Corp. v. Donovan, 650 F.2d 1051, 1054 (9th Cir. 1981).

The circumstances of this case are a picture-book illustration of these dangers. Petitioner Mickeviciute, a citizen of Lithuania, entered this country some twelve years ago on a non-immigrant business visa. She never went home. The following year, 1992, after immigration authorities issued a show cause order, she conceded deportability and applied for asylum. For the next nine years, she litigated the asylum issue, losing on the merits at every stage, culminating in this Court's decision on September 13, 2001, affirming the denial of her petition for asylum. Mickeviciute v. INS, 18 Fed. Appx. 772 (10th Cir. 2001) (unpublished). All that time, she remained in the United States. Shortly before her asylum claims were finally rejected by this Court some ten years after she overstayed her visa, she moved to reopen the proceedings to give her time to initiate federal court litigation on an unrelated legal theory based on events that occurred in 1994. Now she has been given a further reprieve, so that the BIA on remand can rephrase its opinion. In my view, that serves no useful purpose, impedes efficient enforcement of the statutory scheme, and disregards the Supreme Court's admonitions in Abudu regarding the importance of finality in deportation proceedings.[2]

---

[2]The majority argues that another reason justifying a remand is to clarify whether we have jurisdiction. Op. at 9 n.4. The IIRIRA's "transitional rules" forbid judicial

(continued...)

II.

While I believe that the BIA's opinion is sufficiently clear on its face for a reviewing court to understand the rationale, it becomes even clearer when viewed in its procedural context. In 1994, in a process completely unrelated to her deportation and asylum proceedings, Mickeviciute was randomly selected to apply for an immigrant visa under the diversity visa program, 8 U.S.C. § 1153(c).[3] After having "won the lottery,"[4] however, she failed to file a timely application. Under the statute, her eligibility to apply for a diversity visa lapsed at the end of the fiscal year. See 8 U.S.C. § 1154(a)(1)(I)(ii)(II)

---

[2](...continued)
review of discretionary BIA decisions that are "under" certain enumerated sections of the immigration laws, and, according to the majority, the BIA's "cursory explanation" makes it "difficult to ascertain" whether its decision might be based on one of the enumerated sections.  Id.  However, a decision is not "under" an enumerated section unless "the BIA 'specifically addresses' the merits of an alien's request for relief under an enumerated section."  Prado v. Reno, 198 F.3d 286, 291 n.5 (1st Cir. 1999) (quoting Stewart v. INS, 181 F.3d 587, 595 (4th Cir. 1999). Even when the petitioner's underlying relief falls under an enumerated section, if the BIA's denial is based on a petitioner's failure to satisfy "gatekeeper" rules, such as the requirements for reopening under 8 C.F.R. 3.2(c), such a denial is "under" the regulatory rule and not the enumerated section.  Id. at 291-92. Here, the BIA did not "specifically address" any claims arising from an enumerated section, but instead based its decision on Petitioner's failure to submit an appropriate application for relief as required by 8 C.F.R. 3.2(c).  Its decision was therefore "under" the regulation and not an enumerated section.  Finally, even if we look past the "gatekeeper" regulatory rule, Petitioner's underlying claim does not fall within any of the enumerated sections. See Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999) (holding that IIRIRA § 309(c)(4)(E) does not remove jurisdiction to review ineffective assistance of counsel claims).  Therefore, I see no reason to doubt our jurisdiction.

[3] For a description of the diversity visa program, see Nyaga v. Ashcroft, 323 F.3d 906, 907-09 (11th Cir. 2003).

[4] For this terminology, see id.

(lottery winners "remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."); 22 C.F.R. § 42.33(a)(1) ("[E]ligibility for a [diversity] visa . . . ceases at the end of the fiscal year . . . Under no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility."). Having failed to file an application in the allotted time, Mickeviciute was not considered for a diversity visa.

Mickeviciute alleges that her failure to file an application was attributable to attorney malpractice. It is undisputed, however, that the BIA has no authority to allow Mickeviciute to file an untimely application or to award her a diversity visa. Her eligibility (or lack thereof) for a diversity visa, and her attorney's alleged malpractice, were not relevant to any issue involved in her claim for asylum.

Unable to seek relief from the unfortunate mishandling of her diversity visa application before the BIA, Mickeviciute states that she intends to "try to find a solution in federal court for her prior counsel's blunders." Pet. Br. 6. Although these events occurred in 1994, and she discovered her attorney's malpractice in October, 2000, Mickeviciute has apparently not yet filed suit. Id. at 3 n.3. Thus, not only has Mickeviciute not filed an application stating a prima facie case before the BIA, as required by 8 C.F. R. § 3.2, she has not filed such an action *anywhere*.

Moreover, even assuming arguendo that a remedy is available to her in federal

court,[5] it does not necessarily follow that she is entitled to remain in this country in the meantime. Diversity visas are available to eligible persons whether living abroad or in the United States. Nyaga, 323 F.3d at 908. Thus, the outcome of the instant proceeding – deportation – would not prejudice Petitioner's diversity visa claim if it turns out to be meritorious. Reopening the deportation proceeding is therefore not necessary to protect Petitioner's right to obtain relief on her diversity visa claim.

Given this context, the BIA's conclusion that, in order to justify reopening a completed deportation proceeding, a movant must be seeking "a form of relief from deportation that is within the power of this Board to grant," A.R. at 3, is perfectly clear, and not remotely unreasonable. The Board cannot be expected to allow a deportable alien to remain in this country indefinitely, on the basis of the alien's stated intention to file an action in some other forum; nor can the Board be expected to evaluate whether the movant might have a "prima facie case" regarding occurrences outside the Board's

---

[5] Mickeviciute's proposed lawsuit is a mandamus claim that would compel the INS to process her 1994 diversity visa application even though the statute and regulations suggest that she is no longer eligible. The only two courts of appeals to decide this issue have held that federal courts lack jurisdiction to entertain claims for diversity visas after the fiscal year in which the application was to be filed. Nyaga v. Ashcroft, 323 F.3d 906, 916 (11th Cir. 2003); Iddir v. INS, 301 F.3d 492, 500-01 (7th Cir. 2002). See also Ticheva v. Ashcroft, 241 F.Supp.2d 1115 (D.Nev. 2002) (district court could not issue mandamus to compel the INS to process alien's diversity visa application after fiscal year end); Zapata v. INS, 93 F.Supp.2d 355, 358 (S.D.N.Y. 2000) (same); Diallo v. Reno, 61 F.Supp.2d 1361, 1368 (N.D. Ga. 1999) (same). Thus, it is far from obvious that Petitioner can "find a solution" in federal court, when she gets around to trying. This circuit has not had occasion to decide that question.

jurisdiction.

The Supreme Court has stated that the provision authorizing the BIA to reopen deportation proceedings "is framed negatively; it directs the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition." INS v. Jong Ha Wang, 450 U.S. 139, 144 n.5 (1981), quoted in Abudu, 485 U.S. at 105. Motions to reopen are to be granted "only 'in the most extraordinary circumstances.'" Abudu, 485 U.S. at 107 n.11, quoting Bowman Transportation, 419 U.S. at 296. The BIA "has discretion to deny a motion to reopen even if the alien has made out a prima facie case for relief." Abudu, 485 U.S.at 105-06. It is fanciful to suppose that, after an alien has finally been determined to be deportable, the BIA is nevertheless required to reopen proceedings, and the INS is required to grant administrative closure, whenever the alien claims that she might file a lawsuit in another forum, which if successful might give her a second chance to file an application for a discretionary grant of an immigrant visa under an unrelated section of the immigration laws. See Abudu, 485 U.S. at 108 (cautioning against allowing "endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case").

### III.

The panel majority relies heavily on this Court's opinion in Osei v. INS, 305 F.3d 1205 (10th Cir. 2002). Op. at 7. But Osei was a very different case. In Osei, the petitioner

claimed that the results of the underlying asylum proceeding were fundamentally unfair on account of ineffective assistance of counsel, and relied on the BIA's consistent practice of reopening deportation proceedings in such cases. Id. at 1209. This Court remanded to the agency for a reasoned explanation of why it was departing from prior practice. Id. at 1210.

In this case, by contrast, Petitioner does not allege any legal deficiency in the agency's disposition of her asylum claim,[6] and cannot point to any past agency practice of granting motions to reopen for the purpose of allowing the movant to bring suit on unrelated issues in other fora. The agency's explanation for denying the motion to reopen – even if arguably poorly articulated – tracks the legal standards laid down by the Supreme Court in Abudu and is not inconsistent with past decisions. Osei thus does not provide support for reversal and remand in this case.

I therefore respectfully dissent.

---

[6]The majority points out that Petitioner "does argue counsel was ineffective during the deportation proceedings because he failed to inform the BIA she won the diversity visa lottery. Counsel could have sought a motion to remand to hold Petitioner's deportation proceedings in abeyance until her diversity visa application was processed." Op. 12 n.5. But this adds nothing to her claim. There was no need to hold her asylum claim "in abeyance," and she was not injured in any way by counsel's failure to file such a motion. Under the statute and regulations, Mickeviciute's diversity visa application would have been processed in 1994, had it been filed. See 22 C.F.R. § 42.33. If she had been granted a diversity visa, this would have mooted her asylum claim. If the visa had been denied, it would have been irrelevant to the asylum claim. Either way, the failure to file a motion to hold the asylum proceedings "in abeyance" could have had absolutely no effect, other than, perhaps, the creation of still more delay.