MeCONNELL, Circuit Judge,
dissenting.
A decision not to reopen deportation proceedings is in the discretion of the agency, and must not be overturned unless that discretion is abused. INS v. Abudu, 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). An abuse of discretion may be found only when the Board’s decision “provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements.” Osei v. INS, 805 F.8d 1205, 1208 (10th Cir.2002). I cannot agree with the panel majority that this high standard has been satisfied.
I.
When reviewing the decision of an administrative agency, such as the Board of Immigration Appeals (BIA), the panel majority rightly insists that we may not rely on grounds not relied on by the agency. Op. at 1163, quoting St. Anthony Hosp. v. United States Dep’t of Health and Human Servs., 309 F.3d 680, 699 (10th Cir.2002). But the Supreme Court has cautioned us not to take that principle to hypercritical extremes. “While we may not supply a reasoned basis for the agency’s action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.” Bowman Transportation Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). See Curtis, Inc. v. ICC, 662 F.2d 680, 685 (10th Cir.1981).
In this case, the BIA denied Petitioner’s motion to reopen her deportation proceedings on the ground that she “is not seeking a form of relief from deportation that is within the power of this Board to grant.” A.R. at 3. The Board cited the provision of the Code of Federal Regulations governing motions to reopen deportation proceedings, 8 C.F.R. § 3.2(c), which provides that any such motion must be “accompanied by the appropriate application for relief.” Id. Petitioner, however, was not seeking any substantive relief from the BIA. Rather, as the BIA explained, Petitioner sought to delay her deportation “for the sole purpose of permitting [her] to remain in the United States while she seeks relief in the federal courts.” Id.
The panel majority states that it is unable to determine from this opinion which of the several recognized grounds for denying a motion to reopen the BIA relied upon. Op. at 1162. I respectfully disagree. One of the recognized grounds for denying a motion to reopen is that “the movant has not established a prima facie case for the underlying substantive relief sought.” Abudu, 485 U.S. at 104, 108 S.Ct. 904. Under a fair reading of the BIA’s opinion, we can “reasonably discern” that when the BIA stated that the movant “is not seeking a form of relief from deportation that is within the power of this Board to grant,” A.R. at 3, it meant that the movant had not stated “a prima facie case for the underlying substantive relief sought.” Black’s Law Dictionary (7th *1167 ed.1999) defines “prima facie case” as a “party’s production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party’s favor.” The BIA explained why it had no authority, based on Petitioner’s allegations, to rule in her favor. In my opinion, that is clear enough.
Accordingly, contrary to the panel majority, I do not believe that we are “unable” to discern the rationale for the BIA’s decision. Op. at 1162. We have not been asked to affirm on the basis of a legal theory “that the agency itself has not given,” Bowman Transportation, 419 U.S. at 285-86, 95 S.Ct. 438, or to “search the law and the record for reasoning to support the BIA’s decision.” Op. at 1162-1163. The BIA’s explanation may have been brief, but it was clear, and it was not unreasonable.[1]
The majority contends that affirming the BIA would constitute improper judicial intrusion in the agency’s domain as proscribed by INS v. Ventura, — U.S. -, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). This case, however, is virtually the opposite of Ventura. In Ventura, the Ninth Circuit had reversed the BIA on a highly contestable and sensitive factual basis that was expressly not resolved by the agency, and the Supreme Court held that the appellate court must not invade the agency’s delegated authority by deciding the question itself. Id. at 355-56. Here, by contrast, I propose that we affirm the BIA on precisely the grounds stated by the agency. This cannot be construed as an invasion of the agency’s authority.
It is difficult to see what purpose is served by a remand in this case. The panel majority instructs the BIA to explain whether its lack of authority to grant the ultimate relief requested constitutes a failure to establish a prima facie case, or, alternatively, to explain what other grounds it relied upon. Op. at 1163. However, since Petitioner did not state a prima facie case, it is hard to imagine what the BIA could possibly do on remand other than to reissue the identical opinion, substituting the words “prima facie case for the underlying substantive relief sought” for the words “relief from deportation that is within the power of this Board to grant.” Nothing will have been accomplished except to consume legal and administrative resources, and produce delay.
A pointless remand is bad enough in the ordinary administrative law context, but as the Supreme Court has noted, “the reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context.” Abudu, 485 U.S. at 110, 108 S.Ct. 904. “There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases.” Id. at 107, 108 S.Ct. 904. “Granting such motions too freely will permit endless delay of deportation by aliens erea- *1168 tive and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case.” Id. at 108, 108 S.Ct. 904. Thus, a reviewing court may overturn the BIA’s decision not to reopen a deportation proceeding “only upon a showing of the clearest abuse of discretion.” Id. at 107 n. 11, 108 S.Ct. 904, quoting Duval Corp. v. Donovan, 650 F.2d 1051, 1054 (9th Cir.1981).
The circumstances of this case are a picture-book illustration of these dangers. Petitioner Mickeviciute,. a citizen of Lithuania, entered this country some twelve years ago on a non-immigrant business visa. She never went home. The following year, 1992, after immigration authorities issued a show cause order, she conceded deportability and applied for asylum. For the next nine years, she litigated the asylum issue, losing on the merits at every stage, culminating in this Court’s decision on September 13, 2001, affirming the denial of her petition for asylum. Mickeviciute v. INS, 18 Fed. Appx. 772 (10th Cir. 2001) (unpublished). All that time, she remained in the United States. Shortly before her asylum claims were finally rejected by this Court some ten years after she overstayed her visa, she moved to reopen the proceedings to give her time to initiate federal court litigation on an unrelated legal theory based on events that occurred in 1994. Now she has been given a further reprieve, so that the BIA on remand can rephrase its opinion. In my view, that serves no useful purpose, impedes efficient enforcement of the statutory scheme, and disregards the Supreme Court’s admonitions in Abudu regarding the importance of finality in deportation proceedings.[2]
II.
While I believe that the BIA’s opinion is sufficiently clear on its face for a reviewing court to understand the rationale, it becomes even clearer when viewed in its procedural context. In 1994, in a process completely unrelated to her deportation and asylum proceedings, Mickeviciute was randomly selected to apply for an immigrant visa under the diversity visa program, 8 U.S.C. § 1153(c).[3] After having *1169 “won the lottery,”[4] however, she failed to file a timely application. Under the statute, her eligibility to apply for a diversity visa lapsed at the end of the fiscal year. See 8 U.S.C. § 1154(a)(l)(I)(ii)(II) (lottery winners “remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected.”); 22 C.F.R. § 42.33(a)(1) (“[Eligibility for a [diversity] visa ... ceases at the end of the fiscal year ... Under no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility.”). Having failed to file an application in the allotted time, Mickeviciute was not considered for a diversity visa.
Mickeviciute alleges that her failure to file an application was attributable to attorney malpractice. It is undisputed, however, that the BIA has no authority to allow Mickeviciute to file an untimely application or to award her a diversity visa. Her eligibility (or lack thereof) for a diversity visa, and her attorney’s alleged malpractice, were not relevant to any issue involved in her claim for asylum.
Unable to seek relief from the unfortunate mishandling of her diversity visa application before the BIA, Mickeviciute states that she intends to “try to find a solution in federal court for her prior counsel’s blunders.” Pet. Br. 6. Although these events occurred in 1994, and she discovered her attorney’s malpractice in October, 2000, Mickeviciute has apparently not yet filed suit. Id. at 3 n. 3. Thus, not only has Mickeviciute not filed an application stating a prima facie case before the BIA, as required by 8 C.F.R. § 3.2, she has not filed such an action anywhere.
Moreover, even assuming arguendo that a remedy is available to her in federal court,[5] it does not necessarily follow that she is entitled to remain in this country in the meantime. Diversity visas are available to eligible persons whether living abroad or in the United States. Nyaga, 323 F.3d at 908. Thus, the outcome of the instant proceeding — deportation—would not prejudice Petitioner’s diversity visa claim if it turns out to be meritorious. Reopening the deportation proceeding is therefore not necessary to protect Petitioner’s right to obtain relief on her diversity visa claim.
Given this context, the BIA’s conclusion that, in order to justify reopening a completed deportation proceeding, a movant must be seeking “a form of relief from deportation that is within the power of this Board to grant,” A.R. at 3, is perfectly clear, and not remotely unreasonable. The Board cannot be expected to allow a deportable alien to remain in this country indefinitely, on the basis of the alien’s stated intention to file an action in some other forum; nor can the Board be expected to evaluate whether the movant might have a *1170 “prima facie case” regarding occurrences outside the Board’s jurisdiction.
The Supreme Court has stated that the provision authorizing the BIA to reopen deportation proceedings “is framed negatively; it directs the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition.” INS v. Jong Ha Wang, 450 U.S. 139, 144 n. 5, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981), quoted in Abudu, 485 U.S. at 105, 108 S.Ct. 904. Motions to reopen are to be granted “only ‘in the most extraordinary circumstances.’ ” Abudu, 485 U.S. at 107 n. 11, 108 S.Ct. 904, quoting Bowman Transportation, 419 U.S. at 296, 95 S.Ct. 438. The BIA “has discretion to deny a motion to reopen even if the alien has made out a prima facie case for relief.” Abudu, 485 U.S. at 105-06, 108 S.Ct. 904. It is fanciful to suppose that, after an alien has finally been determined to be deportable, the BIA is nevertheless required to reopen proceedings, and the INS is required to grant administrative closure, whenever the alien claims that she might file a lawsuit in another forum, which if successful might give her a second chance to file an application for a discretionary grant of an immigrant visa under an unrelated section of the immigration laws. See Abudu, 485 U.S. at 108, 108 S.Ct. 904 (cautioning against allowing “endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case”).
III.
The panel majority relies heavily on this Court’s opinion in Osei v. INS, 305 F.3d 1205 (10th Cir.2002). Op. at 1163. But Osei was a very different case. In Osei, the petitioner claimed that the results of the underlying asylum proceeding were fundamentally unfair on account of ineffective assistance of counsel, and relied on the BIA’s consistent practice of reopening deportation proceedings in such cases. Id. at 1209. This Court remanded to the agency for a reasoned explanation of why it was departing from prior practice. Id. at 1210.
In this case, by contrast, Petitioner does not allege any legal deficiency in the agency’s disposition of her asylum claim,[6] and cannot point to any past agency practice of granting motions to reopen for the purpose of allowing the movant to bring suit on unrelated issues in other fora. The agency’s explanation for denying the motion to reopen — even if arguably poorly articulated — tracks the legal standards laid down by the Supreme Court in Abudu and is not inconsistent with past decisions. Osei thus does not provide support for reversal and remand in this case.
I therefore respectfully dissent.

. Revealingly, Petitioner’s argument in this Court is not that the agency’s rationale cannot be discerned, but that it was incorrect. Petitioner argues that "contrary to the Board’s reasoning, [she] was seeking a form of relief that was well within the power of the Board to grant. The Board could have (and should have) remanded the case to the immigration court for administrative closure." Pet. Br. 10. But see id. at 11 (noting that "a case may not be administratively closed if opposed by either of the parties,” thus calling into question whether even this form of relief is actually available.) In other words, Petitioner claims that the BIA's authority to postpone deportation is sufficient in itself to warrant an order reopening her case, without regard to whether the Board has authority to rule on her underlying substantive claim. This demonstrates that Petitioner had no difficulty understanding the Board's rationale.

. The majority argues that another reason justifying a remand is to clarify whether we have jurisdiction. Op. at 1164 n. 4. The IIRI-RA's “transitional rules” forbid judicial review of discretionary BIA decisions that are “under” certain enumerated sections of the immigration laws, and, according to the majority, the BIA's “cursory explanation” makes it "difficult to ascertain” whether its decision might be based on one of the enumerated sections. Id. However, a decision is not "under” an enumerated section unless "the BIA 'specifically addresses' the merits of an alien's request for relief under an enumerated section.” Prado v. Reno, 198 F.3d 286, 291 n. 5 (1st Cir.1999) (quoting Stewart v. INS, 181 F.3d 587, 595 (4th Cir.1999)). Even when the petitioner's underlying relief falls under an enumerated section, if the BIA's denial is based on a petitioner's failure to satisfy "gatekeeper” rules, such as the requirements for reopening under 8 C.F.R. 3.2(c), such a denial is "under” the regulatory rule and not the enumerated section. Id. at 291-92. Here, the BIA did not "specifically address” any claims arising from an enumerated section, but instead based its decision on Petitioner's failure to submit an appropriate application for relief as required by 8 C.F.R. 3.2(c). Its decision was therefore "under” the regulation and not an enumerated section. Finally, even if we look past the "gatekeeper" regulatory rule, Petitioner’s underlying claim does not fall within any of the enumerated sections. See Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir.1999) (holding that IIRIRA § 309(c)(4)(E) does not remove jurisdiction to review ineffective assistance of counsel claims). Therefore, I see no reason to doubt our jurisdiction.

. For a description of the diversity visa program, see Nyaga v. Ashcroft, 323 F.3d 906, 907-09 (11th Cir.2003).

. For this terminology, see id.

. Mickeviciute's proposed lawsuit is a mandamus claim that would compel the INS to process her 1994 diversity visa application even though the statute and regulations suggest that she is no longer eligible. The only two courts of appeals to decide this issue have held that federal courts lack jurisdiction to entertain claims for diversity visas after the fiscal year in which the application was to be filed. Nyaga v. Ashcroft, 323 F.3d 906, 916 (11th Cir.2003); Iddir v. INS, 301 F.3d 492, 500-01 (7th Cir.2002). See also Ticheva v. Ashcroft, 241 F.Supp.2d 1115 (D.Nev.2002) (district court could not issue mandamus to compel the INS to process alien’s diversity visa application after fiscal year end); Zapata v. INS, 93 F.Supp.2d 355, 358 (S.D.N.Y.2000) (same); Diallo v. Reno, 61 F.Supp.2d 1361, 1368 (N.D.Ga.1999) (same). Thus, it is far from obvious that Petitioner can “find a solution” in federal court, when she gets around to trying. This circuit has not had occasion to decide that question.

. The majority points out that Petitioner “does argue counsel was ineffective during the deportation proceedings because he failed to inform the BIA she won the diversity visa lottery. Counsel could have sought a motion to remand to hold Petitioner's deportation proceedings in abeyance until her diversity visa application was processed.” Op. 1165-1166 n. 5. But this adds nothing to her claim. There was no need to hold her asylum claim "in abeyance,” and she was not injured in any way by counsel’s failure to file such a motion. Under the statute and regulations, Mickevici-ute’s diversity visa application would have been processed in 1994, had it been filed. See 22 C.F.R. § 42.33. If she had been granted a diversity visa, this would have mooted her asylum claim. If the visa had been denied, it would have been irrelevant to the asylum claim. Either way, the failure to file a motion to hold the asylum proceedings "in abeyance” could have had absolutely no effect, other than, perhaps, the creation of still more delay.